204

In re D.C. SULLIVAN, Bankrupt.

Ira M. DOHONIAN, James F. Morgotta, Donald P. MacMunn, Clement A. O'Brien, Daniel Sullivan and John Esseriar, Plaintiffs,

v.

Milton GOODMAN, Charlotte R. Berkowitz, Jacob Berkowitz, Rosalyn Goodman, John P. Bennett, and Daniel H. Wolfe, Defendants.

Bankruptcy No. 70–614–G.

United States Bankruptcy Court, D. Massachusetts.

Dec. 16, 1986.

See also, Bkrtcy., 69 B.R. 206.

Mark Berman, Widett, Slater & Goldman, Boston, Mass., for D.C. Sullivan.

James Freeley, Freeley & Freeley, Boston, Mass., for plaintiffs-Stockholders.

Richard J. McCarthy, Gaston Snow & Ely Bartlett, Boston, Mass., for defendants John P. Bennett, Daniel H. Wolfe.

## OPINION AND ORDER

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Plaintiffs in this adversary proceeding are stockholders of D.C. Sullivan and Co., Inc. (the "Debtor") and successors in interest to the Debtor's rights in certain real estate. On May 22, 1970, creditors of the Debtor filed with this Court an involuntary bankruptcy petition under the Bankruptcy Act of 1898 as amended, 11 U.S.C. § 1 *et seq.* (repealed 1978) (the "prior Act"). The Court issued an order temporarily restraining Rosalyn Realty Trust, and its Trustees, Milton Goodman and Charlotte Goodman, from foreclosing upon the real estate in question. The Goodmans nevertheless proceeded with the foreclosure the next day, and the property was sold to Charlotte Goodman. There is some question as to whether the Goodmans received notice of the restraining order prior to the foreclosure sale. The plaintiffs allege that the property was sold at less than its fair market value and in violation of this Court's order.

The trustee in bankruptcy (the "Trustee") took some initial steps seeking to invalidate the foreclosure sale, but the matter was never determined by the Court. The case remained open for a number of years pending completion of litigation unrelated to the present controversy. In

1984, the Trustee sought authority from this Court to abandon all interest in the real estate, alleging that pursuit of the claim concerning the foreclosure would be expensive and probably unsuccessful. The Trustee informed the Court at that time that there were sufficient funds in the estate to pay a 100% dividend, so that the successful prosecution of the claim would likely redound to the benefit of the Debtor's stockholders. The stockholders, the plaintiffs here, objected to abandonment. In 1985, the Court issued an order permitting the Trustee to abandon his interest in the property unless within 10 days the plaintiffs came to an agreement with the Trustee for the purchase of his interest. Within that period, the Trustee sold his interest in the property to the plaintiffs for one hundred dollars ($100.00).

The plaintiffs now bring this action against the Goodmans and subsequent purchasers of the property seeking a declaration that they own the property because the foreclosure sale was conducted fraudulently and in violation of this Court's order. Before the defendants were served, the Trustee moved to intervene and to dismiss the complaint on jurisdictional grounds.

The Trustee is almost ready to close this prolonged case. As the result of settling an adversary proceeding brought to recover a fraudulent transfer, the Trustee has recovered $930,000. Except for disposition of the present adversary proceeding, all that remains to close the case is the allowance by this Court of applications for compensation by the Trustee and various counsel, and the disbursement of funds. Creditors have already received a 100% dividend, and they will receive substantial interest payments.

The Trustee asserts as the ground for his motion to intervene that the prosecution of the present adversary proceeding in this Court will delay the closing of this bankruptcy case. The Trustee does not argue, nor could he do so with any merit, that this adversary proceeding would necessarily delay disbursement of funds, except perhaps for a small amount held in reserve to cover compensation for services in closing the case if payment was not handled by way of estimation in the final compensation allowance. The Trustee's position is apparently that delay in the closing of the case, of itself, is sufficient ground for his intervention.

■ Intervention by the Trustee is not permissible in these circumstances. A party *shall* be permitted to intervene when (1) a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the subject property or transaction and the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless that interest is adequately represented by existing parties. BANKR.R. 7024(a). A party *may* be permitted to intervene when (1) a statute of the United States confers a conditional right to intervene; or (2) when the applicant's claim or defense and the main action have a question of law or fact in common. BANKR.R. 7024(b). None of these grounds for mandatory or permissive intervention apply here.

■ The Court will nevertheless deal with the issue of jurisdiction over this adversary proceeding because of the Court's overriding duty to see that its jurisdiction is not exceeded. *In re Coastal Cable T.V., Inc.*, 709 F.2d 762 (1st Cir.1983). A ruling on jurisdiction is particularly appropriate here where the parties have argued the matter and the plaintiffs have objected to intervention but have not posed BANKR.R. 7024 as a bar to intervention. We conclude that the Court has no jurisdiction by reason of the jurisdictional limitations of the prior Act. We also note, but do not rule upon, a grave constitutional question concerning this Court's jurisdiction.

The jurisdiction of bankruptcy courts under the prior Act was very circumscribed. Generally, except for actions brought by a trustee or a receiver to recover preferences or fraudulent transfers, 11 U.S.C. § 46 (repealed 1978), the court had jurisdiction only over matters pertaining to administration of the bankruptcy case. Those administra-

tive proceedings included such matters as: allowance of claims; appointment of receivers and trustees; establishing the bankrupt's property rights; adjudication of the bankrupt; and distribution of funds to creditors. *See* 11 U.S.C. § 11 (repealed 1978).

This adversary proceeding has absolutely nothing to do with the administration of the bankruptcy estate. The cause of action upon which it is based was transferred by the Trustee out of the bankruptcy estate to the plaintiffs. By allowing the transfer, the Court lost any statutory jurisdiction it may have had to adjudicate ownership rights in the property. In the Trustee's hands, causes of action relating to the property were in the estate and thus within this Court's statutory jurisdiction. When sold to the plaintiffs, the rights no longer formed part of the estate. Although this Court may still have equitable jurisdiction over the disregard of its order staying the foreclosure of the property, and perhaps even statutory jurisdiction, *see* 11 U.S.C. § 11(a)(4) (repealed 1978), exercise of its contempt power would not have the effect of bringing the property back into the estate. Because no jurisdiction exists over the property in this Court, its orders can no longer affect it. In any case, this Court declines to exercise its contempt power at this late date, given the passage of time, the subsequent transfers, and the desireability of closing this case. We hold, therefore, that no jurisdiction exists for this Court to hear this adversary proceeding by reason of the the jurisdictional provisions of the prior Act.

In view of our holding, we need not reach the question of the Court's constitutional jurisdiction over this cause of action. The Supreme Court, in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), held that only Article III courts may adjudicate a breach of contract action brought by a Chapter 11 debtor, and invalidated the then—existing jurisdictional provisions of the Bankruptcy Code (28 U.S.C. § 1471 (1976 Supp. IV). Although the Supreme Court did not consider the constitutionality of the jurisdictional scheme under the prior Act, *see Northern Pipeline*, 458 U.S. at 79 n. 31, 102 S.Ct. at 2876 n. 31, we have serious doubt as to whether this Court can constitutionally adjudicate ownership of the property now that it is not part of the bankruptcy estate. We need not, however, pass on this issue.

The adversary proceeding is dismissed.

SO ORDERED.

See also, Bkrtcy., 69 B.R. 212.